UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUNCAN ALEXANDER,

              Petitioner,           Case Number 14-CV-13430
                                   Hon. George Caram Steeh
   v.                       United States District Judge

THOMAS WINN,

              Respondent.
_____/

**<u>OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*</u>**

Duncan Alexander, ("Petitioner"), incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan, filed a *pro se* habeas corpus petition challenging his state conviction for five counts of first-degree criminal sexual conduct, two counts of second-degree criminal sexual conduct, one count of child sexually abusive activity, one count of possession of child sexually abusive material, one count of gross indecency, and one count of possession with intent to deliver less than 50 grams of cocaine. For the reasons stated below, the petition for a writ of habeas corpus is DENIED.

# I.  BACKGROUND

Petitioner was convicted following a jury trial in the Macomb County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

## I. BASIC FACTS AND PROCEDURAL HISTORY

A lengthy jury trial was held in this case. Each lower court case is related to a separate CSC victim (AH, KB, and TH)[1]; KB's case (Docket No. 302038) additionally contains defendant's possession with intent to deliver cocaine conviction.

## A. INVESTIGATION AND ARREST

Detective Sergeant James Selewski of the Sterling Heights Police Department was working in the youth division of the Sterling Heights Police Department in 2009. Selewski became the officer in charge of a CSC investigation involving (at the time) two complainants, KB and AH. Selewski called Detective Galewski to interview KB and AH. The two complainants were interviewed and a forensic examination of AH was conducted. AH was given a full-body examination and a sexual abuse evidence kit was completed. Anal and vaginal swabs were taken, as well as a swab from AH's left breast. A hair was found in AH's underwear. Later, "suspect" samples of defendant's DNA and hair were taken, including a penile swab.

---

[1] Because the victims were minors at the time of the offenses, the Court will refer to them by their initials only to preserve their privacy. See Fed. R. Civ. P. 5.2(a).  The Court will also refer to one of the victim's mothers by her initials, as the Michigan Court of Appeals did, for the same reason.

Based on the interviews, Selewski ordered that defendant be arrested and obtained a search warrant for defendant's home. Police entered defendant's home searching for photographs and other forms of media. Police seized items from defendant's bedroom, including a desktop computer, laptop computer, video cameras, bedding, and clothing. During the search, police discovered three baggies containing white powder under defendant's mattress. Police also found bottles of Inositol, a purported nutritional supplement that is often used to cut cocaine, as well as a digital scale.

Defendant was arrested and brought to the Macomb County Sheriff's office, where he was interviewed by Detective Anderson of the Macomb County Sheriff's Office. Defendant waived his *Miranda* rights via written form. Defendant told Anderson that he lived with AH and her mother, SH, to whom he was engaged at the time. KB was a friend of the family. Defendant denied sexually abusing AH or KB. He stated that on the day he allegedly assaulted AH, he had grounded her for not doing her schoolwork. He further stated that he had kissed her stomach in a playful manner, and that a short time later he caught AH masturbating.

Regarding KB, defendant stated that he had taken photographs of KB in order to assist her with getting into modeling; he denied taking any nude or inappropriate pictures. Defendant stated that he thought KB was flirting with him and that they had spoken about sexual issues and masturbation. Defendant stated that he had taken KB to a convention on modeling and that during the visit, he had photographed himself nude in the hotel room with the intent of sending the pictures to SH. He stated that KB was not present when he took the pictures. He also stated that KB had taken pictures of herself that were inappropriate and placed them on his computer. He stated that he deleted the pictures when he discovered them.

The white powder in the bags was identified by laboratory testing as cocaine. Biology trace testing revealed saliva on AH's genital swabs and underpants. The hair found in AH's

underwear was microscopically similar to defendant's pubic hair. DNA testing revealed that the saliva found on AH's genital swab belonged to AH. Defendant's penile swab revealed a mixture of two individuals, one of whom was defendant. AH could not be excluded as the other donor.

In 2009, TH alleged that she had been sexually abused by defendant. She was interviewed at CARE House by a forensic interviewer. As a result of this interview, additional charges were filed against defendant.

## B. RELEVANT PRETRIAL MOTIONS

On February 18, 2010, the prosecution requested that the trial court join the three files against defendant into one trial, arguing that the offenses were related under MCR 6.120(B)(1)(c), and additionally arguing that evidence of sexual abuse of each victim would be admissible in the other cases against defendant. The trial court determined that no prejudice would result from joinder of the trials and granted the motion to join the trials. Defendant requested at the beginning of trial that the trials be severed; the trial court denied the request.

On August 3, 2010, defendant filed a motion to dismiss the charges against him, claiming his right to a speedy trial had been violated. After a hearing on September 13, 2010, the trial court denied defendant's motion.

## C. TRIAL

Each of the victims testified at defendant's trial. KB testified that defendant had known her mother for 15 years, and that she called him her uncle and looked up to him. She first met defendant in 2007 when she was 13. KB knew both AH and TH. She testified that in February of 2009, defendant invited her to go to a water park in Ohio with him and his children. However, after she arrived at defendant's house, defendant told her there was a problem with the hotel reservations and they could not go. Instead KB stayed at defendant's house that weekend with defendant and his children. On Sunday,

defendant took his children home; afterward he and KB went to McDonald's and talked about KB's interest in modeling. Defendant indicated to KB that he could help her start a modeling career. Defendant made a phone call, purportedly to a modeling agency, and told KB that the woman he spoke to wanted pictures of her. Defendant offered to take the pictures.

Defendant took pictures of her hands, feet, legs, and face. KB also testified that defendant took 14 photos that were admitted into evidence. The photos depicted her in various poses, including bending over and exposing her buttocks, pulling her top up to expose her stomach, on the bed with her legs spread and a stuffed animal in front of her genital area, and pictures that exposed "thong" underwear that defendant gave her to wear.

KB testified that defendant then told her to lie on the bed and that she "needed to make the camera want [her]." She stated that when she turned around, defendant had removed his clothing and was touching his penis with his hand. Defendant then removed her underwear and placed his tongue in her vagina. Defendant took KB home after taking her to get her nails done. KB testified that she knew what defendant did was wrong, but that she did not tell anyone because she thought it was her fault and her mother would not believe her.

About a month later, KB agreed to accompany defendant to a purported photo shoot at a hotel. She testified that in the hotel room, defendant directed her to take pictures of himself nude and touching his penis. Two pictures of defendant nude were admitted into evidence.

KB's mother testified that she became suspicious after conversing with defendant's fiancée and discovering that she was not present during the weekend of the attempted trip to the water park. She questioned KB; after KB told her what happened, she took KB to the police station.

AH testified that she lived with defendant, TH (her sister), and her mother, SH. She was eleven in 2009. In the parking lot of

the police station, AH volunteered that she had been "molested" by defendant, using that exact word. She testified that defendant had touched her vaginal area with his hand, tongue, and penis. She testified that at least three incidents happened—on defendant's bed, on a couch, and on a mattress in the basement. She also testified that defendant touched her breasts during all three incidents. She denied masturbating and denied that defendant ever kissed her stomach in a playful way. AH testified that she was sexually abused as punishment for missing homework assignments.

TH testified that she lived with defendant, AH, and her mother, SH, in 2009. In July of 2009, TH disclosed that she had also been sexually abused by defendant. She testified that defendant would make her do a "stand" when she was being punished—he would make her take off her pants and underwear and get on her hands and knees, and would touch her vagina with his hands and penis. This happened four or five days per week from the age of nine to thirteen. She also testified that defendant would rub his penis until he ejaculated onto a towel.

SH testified that following defendant's arrest, defendant asked her throw away his "come towel," put a CD holder in boiling water, and flush other items down the toilet. She denied influencing any of the victims' testimony and stated that she told them to tell the truth. She testified that defendant never sent her any nude pictures, and never told her that he caught AH masturbating.

A DNA analyst, Shiao–Mei Smith, testified as to the testing of the DNA found on defendant's penile swab. She testified that the she was able to deduce a "partial [DNA] profile" of the second DNA donor from eight locations on the provided DNA swab, and that the eight locations matched AH's DNA profile. Smith further testified that this partial profile could be found in one of 4.7 billion people in the Caucasian population. Smith admitted on cross examination that she could not state with scientific certainty that DNA was from AH, but only that she could not be excluded. Smith also testified that she had initially

received mismarked samples and had to request new samples. She stated she had not received any DNA samples from SH.

A police expert in forensic computer investigation, Detective Miller, testified as to his investigation of defendant's computer. Miller recovered more than 20 pictures of KB in various stages of undress that had been saved to the computer and then deleted. Miller also located two pornographic video files saved onto the computer. The videos depicted young girls engaged in sexual acts. The names of the videos were "14 YO girl reaches orgasm peeing with big toys vibrator.mpg" and "15 YO girl fingers 14 YO friend.mpg."

Defendant presented testimony from a friend of his and his son as to his good character and his involvement in the music and lawn aeration businesses. Defendant also testified and denied taking suggestive photos of KB, claiming that she photographed herself with the self-timing feature on his camera and that he deleted the pictures when he discovered them. He denied removing her underwear, removing any of his clothing, or masturbating in front of her. Defendant stated that he took nude photos of himself at the hotel room while KB was not present, to send to his fiancée. He denied sexually abusing AH and TH. He stated that he caught AH masturbating and that he told SH this. He testified that he had taken the cocaine and scale from a friend at a party. Defendant stated that he used Inositol as a workout supplement. Defendant also testified that he downloaded pornographic videos from "Lime Wire" without necessarily looking at the titles, and that he had searched for "squirting" videos.

The trial court denied defendant's motion for a directed verdict related to the possession with intent to deliver cocaine charge and the gross indecency charges. The jury convicted defendant as stated above.

*People v. Alexander*, No. 302026, 2013 WL 5663122, at * 1–4 (Mich. Ct. App. Oct. 17, 2013)(internal footnote omitted).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 495 Mich. 979, 843 N.W.2d 903 (2014); *reconsideration den.* 496 Mich. 862, 847 N.W.2d 629 (2014).

Petitioner filed his petition for writ of habeas corpus, which was held in abeyance so that he could return to the state courts to exhaust additional claims. (ECF No. 13).

Petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.,* which the trial court denied. *People v. Alexander,* No. 2009-5130, 2009-5132, 2009-5135 (Macomb Cty.Cir.Ct., Aug. 16, 2017)(ECF No. 22-36).  The Michigan appellate courts denied petitioner leave to appeal. *People v. Alexander,* No. 342398 (Mich.Ct.App. July 11, 2018); *lv. den.* 503 Mich. 947, 922 N.W.2d 125 (2019).

This Court reopened the case to the Court's active docket and permitted petitioner to file an amended petition.

In his original petition, petitioner seeks habeas relief on the following grounds:

> I. There was insufficient evidence to support any of the charges.

> II. The trial court abused its discretion and violated Alexander's due process rights by granting the prosecutor's motion for joinder of the three cases into a single trial.

III. Alexander spent 559 days in jail awaiting trial, of which only 17 days were attributable to Alexander. The trial court erred in failing to dismiss the case as violating Alexander's right to a speedy trial.

IV. Alexander was deprived of the effective assistance of counsel for: a. The failure of defense counsel to investigate and consult with an expert about the forensic interview process, external influences of children's memory and common behaviors of persons who sexual abuse children, as well as by defense counsel's failure to effectively cross-examine prosecution witnesses and obtain an expert witness to testify about these matters. b. Trial counsel failed to subject the prosecution's case to meaningful adversarial testing, resulting in a presumption of prejudice.

V. The trial court abused its discretion and deprived Alexander of a fair trial in its evidentiary rulings, individually and cumulatively, at trial.

VI. The cumulative effect of all errors deprived Alexander of a fair trial.

VII. Trial counsel committed a wide range of errors and omissions which deprived Alexander the effective assistance of counsel.

In his amended petition, petitioner seeks relief on the following grounds:

I. Defendant is entitled to relief from judgment where he was denied his state and federal constitutional rights to self-representation.

II. Defendant is entitled to relief from judgment where his sentencing offense variables were improperly scored; defendant was denied due process where these scores were not admitted by defendant nor determined by a jury, therefore constituting a departure contrary to the recent holding in *People v. Lockridge*.

III. Defendant is entitled to relief from judgment where he was denied the effective assistance of appellate counsel for failure to raise plain and obvious issues; the cumulative effect of errors on appeal as articulated by the Court of Appeals opinion demonstrates ineffectiveness and deficient performance which was outcome determinative under the *Strickland* standard and but for counsel's unprofessional errors a different outcome was likely. A new trial or appeal should be ordered.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal

law if the state court arrives at a conclusion opposite to that reached by

the Supreme Court on a question of law or if the state court decides a

case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a

prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ

simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law

erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

### A. Claim # 1. The insufficiency of evidence claims.

Petitioner first argues that the evidence was insufficient to convict.

It is beyond question that "the Due Process Clause protects the

accused against conviction except upon proof beyond a reasonable doubt

of every fact necessary to constitute the crime with which he is charged."

*In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review

of the sufficiency of the evidence to support a criminal conviction is,

"whether the record evidence could reasonably support a finding of guilt

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318

(1979).  A court need not "ask itself whether *it* believes that the evidence

at the trial established guilt beyond a reasonable doubt."  Instead, the

relevant question is whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).  A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id*.

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor

was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992).  A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

Petitioner initially contends that there was insufficient evidence to support his various criminal sexual conduct convictions because the victims' testimony was inconsistent, incredible, and not corroborated by any additional witness testimony or physical evidence.

Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.*  Indeed, the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction, so long as the prosecution presents evidence which establishes the elements of the offense beyond a

- 13 -

reasonable doubt. *Brown v. Davis,* 752 F. 2d 1142, 1144-1145 (6th Cir. 1985).

Petitioner's insufficiency of evidence claim rests on an allegation of the victims' credibility, which is the province of the jury. Petitioner is therefore not entitled to habeas relief on this claim. See *Tyler v. Mitchell,* 416 F. 3d 500, 505 (6th Cir. 2005).

Additionally, the fact that the victims' testimony was uncorroborated does not render the evidence in this case insufficient. The testimony of a sexual assault victim alone is sufficient to support a criminal defendant's conviction. *See United States v. Howard,* 218 F. 3d 556, 565 (6th Cir. 2000)(citing *Gilbert v. Parke,* 763 F. 2d 821, 826 (6th Cir. 1985)). The victims' testimony that petitioner engaged in various forms of sexual misconduct with them was sufficient to sustain petitioner's criminal sexual conduct convictions, notwithstanding the alleged lack of additional evidence to corroborate the victims' testimony. See *O'Hara v. Brigano,* 499 F. 3d 492, 500 (6th Cir. 2007).

Petitioner argues that there was insufficient evidence to convict him because the police did not recover DNA evidence, fingerprints, or other forensic evidence to convict. The Sixth Circuit notes that the "lack of physical evidence does not render the evidence presented insufficient;

- 14 -

instead it goes to weight of the evidence, not its sufficiency." *Gipson v. Sheldon*, 659 F. App'x. 871, 882 (6th Cir. 2016). Petitioner is not entitled to relief on his claim that there was insufficient evidence to sustain his criminal sexual conduct convictions.

Petitioner also claims that there was insufficient evidence to support his possession of child sexually abusive material conviction. Petitioner, however, makes no argument in his petition or in his state appellate court briefs which he attached to his petition as to why the evidence was insufficient to convict him of this charge. A habeas petitioner is not entitled to federal habeas relief on a conclusory, unsupported claim that the evidence was insufficient to convict. Petitioner is not entitled to relief on this claim. *See Bradford v. Williams*, 479 F. App'x. 832, 836 (10th Cir. 2012).

Petitioner lastly contends that there was insufficient evidence to convict him of possession with intent to deliver cocaine. The Michigan Court of Appeals rejected this claim:

> Here, Selewski testified that three baggies of a powder that turned out to be cocaine were found in defendant's room, along with a scale and bottles of a substance commonly used as a cutting agent. Selewski testified that the baggies, scale, and cutting agent found in the room were consistent with the distribution of controlled substances. Viewed in the light most favorable to the prosecution, a jury could rationally conclude from the fact that the cocaine was packaged in multiple

baggies and the presence of a scale and cutting agent that the cocaine was not solely for defendant's personal use and that he intended to deliver it to others. Although defendant presented an alternate explanation for his possession of the cocaine, scale, and cutting agent, the jury did not find defendant's explanation credible. We find no basis on which to disturb the jury's determination.

*People v. Alexander*, 2013 WL 5663122, at * 6 (internal citation omitted).

Under Michigan law, to convict a defendant of possession with intent to deliver a controlled substance, the prosecution must prove: (1) that the recovered substance is a narcotic; (2) the weight of the substance; (3) that the defendant was not authorized to possess the substance; and (4) that the defendant knowingly possessed the substance with the intent to deliver it. *See People v. McGhee,* 268 Mich. App. 600, 622; 709 N.W.2d 595 (2005).

"Intent to deliver has been inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *People v. Wolfe*, 440 Mich. 508, 524, 441 N.W. 2d 1201 (1992).  A defendant's intent to deliver may be established by circumstantial evidence. *See People v. Ray*, 191 Mich. App 706, 708; 479 N.W. 2d 1 (1991).

The Michigan Court of Appeals reasonably concluded that there was sufficient evidence to convict petitioner of possession with intent to deliver

cocaine.  In the present case, evidence that the cocaine had been

packaged into separate baggies and that a scale had been recovered from

the house support the jury's finding that petitioner intended to deliver the

cocaine recovered from the house. *See United States v. Miller,* 817 F.

App'x. 119, 125 (6th Cir. 2020).   The presence of a cutting agent also

supports a finding that petitioner intended to deliver the cocaine in his

possession. *See United States v. Collier*, 246 F. App'x. 321, 330 (6th Cir.

2007).  Petitioner is not entitled to relief on his first claim.

### B. Claim # 2.  The misjoinder claim.

Petitioner next claims that his right to a fair trial was violated when

the judge granted the prosecutor's request to consolidate petitioner's three

separate cases involving different victims and different charges into one

trial.

Improper joinder does not, by itself, violate the federal constitution.

*United States v. Lane,* 474 U.S. 438, 446, n. 8 (1986).  The Supreme

Court in *Lane* suggested in passing that misjoinder could rise "to the level

of a constitutional violation only if it results in prejudice so great as to deny

a defendant his Fifth Amendment right to a fair trial." *Id.*  The Sixth Circuit

noted that this language in *Lane* concerning a court's failure to sever

criminal charges is simply dicta and thus not clearly established federal

law. See *Mayfield v. Morrow,* 528 F. App'x. 538, 541-42 (6th Cir. 2013).

Because "'clearly established Federal law' for purposes of § 2254(d)(1)

refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's

decisions[.],'" *Id*. (quoting *Williams v. Taylor*, 529 U.S. at 412), the Sixth

Circuit concluded that the habeas petitioner could not rely on *Lane* to

obtain habeas relief on his claim that he had been deprived of his right to a

fair trial when the judge denied his motion to sever different rape charges.

*Id.*

The Ninth Circuit has likewise held that a habeas petitioner could not

rely on the Supreme Court's dicta in *Lane* to obtain habeas relief on an

improper misjoinder claim, particularly where that dicta was merely

mentioned as a comment in a footnote of the opinion. See *Collins v.*

*Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010).  Another judge in this

district, in rejecting a similar claim, indicated that he had "found no

Supreme Court cases holding that a defendant in a criminal case has a

constitutional right to a separate trial on each of the charges against him."

*Rodriguez v. Jones*, 625 F. Supp. 2d 552, 560-61 (E.D. Mich.

2009)(Rosen, J.).

Given the lack of holdings by the Supreme Court on the issue of

whether a state court violates a habeas petitioner's due process rights by

joining together unrelated criminal charges in a single trial, the Michigan Court of Appeals' rejection of petitioner's improper joinder claim was not an unreasonable application of clearly established federal law. See *Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 (2006); *See also Comaduran v. Clark,* 452 F. App'x. 728, 728-29 (9th Cir. 2011).

Moreover, such claims have typically been rejected by the Sixth Circuit even on direct review of federal criminal convictions.  The Sixth Circuit held that to establish prejudice from joinder, a defendant must point to specific evidence that the joinder was prejudicial and "an unproven assertion is not compelling evidence of actual prejudice." *U.S. v. Saadey*, 393 F. 3d 669, 679 (6th Cir. 2005).  A jury is presumed capable of considering each criminal count separately and any prejudice arising from trial of joined offenses may be cured by limiting instructions. *U.S. v. Cope*, 312 F. 3d 757, 781 (6th Cir. 2002).  "Error based on misjoinder is almost always harmless where...the trial court issues a careful limiting instruction to the jury on the issue of possible prejudice resulting from the joinder." *U.S. v. Cody*, 498 F. 3d 582, 587 (6th Cir. 2007).

"[U]nder Michigan law, severance is required only when a defendant shows that it is necessary to avoid prejudice to his substantial rights."

*Clark v. McLemore,* 291 F. Supp. 2d 535, 545 (E.D. Mich. 2003)(citing

M.C.R. 6.121(C)). "[T]here is no absolute right to a separate trial, and joint

trials are strongly favored 'in the interest of justice, judicial economy and

administration.'" *Id.* (quoting *People v. Etheridge*, 196 Mich. App. 43, 52;

492 N.W. 2d 490 (1992)).  Severance should only be granted "if there is a

serious risk that a joint trial would compromise a specific trial right of one

of the defendants, or prevent the jury from making a reliable judgment

about guilt or innocence." *People v. Hana*, 447 Mich. 325, 359-60; 524

N.W. 2d 682 (1994)).  Finally, under M.C.R. 6.120(B), a court must sever

offenses that are not related as defined in MCR 6.120(B).  MCR 6.120(B)

defines related offenses that are those "based on (1) the same conduct, or

(2) a series of connected acts or acts constituting part of a single scheme

or plan."

    In the present case, it was not fundamentally unfair to join the

different charges against petitioner in a single trial because "joinder was

an efficient use of resources." *Rodriguez v. Jones*, 625 F. Supp. 2d at 561;

See also *Conte v. Cardwell*, 475 F. 2d 698, 700 (6th Cir.

1973)(participation by state habeas corpus petitioner in successive prison

riots in the same institution separated in time by less than two months

were sufficient circumstances to permit joinder of offenses in an indictment and in a trial without violation of due process.).

Petitioner was also not prejudiced by the joinder of the charges, because the Michigan Court of Appeals indicated that much of the same evidence involving the three separate cases would have been admissible against petitioner pursuant to M.C.L.A. 678.27a at separate trials. *People v. Alexander*, 2013 WL 5663122, at * 8 Because much of the same evidence would have been admitted against petitioner at separate trials, petitioner was not prejudiced by the joinder of the charges in this case. See *LaMar v. Houk,* 798 F.3d 405, 428 (6th Cir. 2015).  Petitioner is not entitled to habeas relief because he failed to identify which evidence that was admitted at his joint trial would have been inadmissible if he had been tried separately with respect to each set of charges. *Id.*   Petitioner is not entitled to relief on his second claim.

### C. Claim # 3.  The speedy trial claim.

Petitioner next claims that his right to a speedy trial was violated.

The Michigan Court of Appeals rejected the claim at length:

Here, defendant was arrested on March 25, 2009. Defendant's speedy trial motion was decided by the trial court on September 13, 2010 and defendant's trial commenced on October 5, 2010. Thus, 559 days elapsed between arrest and trial. The 18–month benchmark was met on September 25, 2010—after the trial court's decision on defendant's motion.

Thus, at the time of the trial court's decision, the burden was on defendant to prove prejudice. However, the delay was presumptively prejudicial by the time trial commenced.

We conclude that the trial court did not err in denying defendant's motion. Defendant moved for discovery on December 04, 2009; the motion was adjudicated on December 14, 2009. Time spent adjudicating defense motions is charged to defendant. The trial court noted that on December 14, 2009, it granted defendant's request to obtain a computer/electronics expert and DNA expert. Although no adjournment appears to have been entered, the trial court concluded, and defense counsel agreed, that some period of time could be attributed to the defense in order to allow time for its expert to prepare (although no expert ultimately testified at trial). Further, this conclusion is supported by the fact that defendant requested to adjourn the next substantial event following this grant, the pretrial conference on January 13, 2010 until January 20, 2010.

Further, the original trial date of March 4, 2010 was adjourned by stipulation until May 11, 2010. Adjournments stipulated to by the defendant are attributable to the defendant. Thus, the bulk of the period between December 04, 2009 and May 11, 2010, 158 days, was attributable to the defendant.

The trial court also did not clearly err in discounting 60 of the remaining days from May 11, 2010 to the date of the motion hearing from attribution to the prosecution, and charging the remaining days to the prosecution due to the unavailability of the investigating officer. The trial court appears to have credited the 60 days to scheduling delays and delays caused by the court system by making references like "if we had not been thinking that [the investigating officer] could come back" and stating that "I have to take responsibility for those." Scheduling delays and delays caused by the court system, although attributable to the prosecution, should be given a neutral tint and only minimal weight.

In sum, the trial court did not err in concluding that, although portions of the delay were attributable to the prosecution and court system, a significant portion of the delay was attributable to defendant by adjudication of defense motions and requested and stipulated-to adjournments (almost six months by this Court's count). Further, with respect to the prejudice factor, defendant only claims generally that he "lost witnesses" as a result of his incarceration, that he suffered natural loss of memory of events, and that he suffered anxiety and depression as a result of his incarceration. Defendant names no witnesses allegedly lost by this delay, and does not explain how these witnesses would have aided his defense. "General allegations of prejudice are insufficient to establish that a defendant was denied the right to a speedy trial." We therefore conclude that the trial court did not err in denying defendant's motion.

Defendant's trial commenced on October 5, 2010, approximately three weeks after the trial court's decision on defendant's motion to dismiss. By that point, as noted above, the 18 month benchmark had passed. However, defendant did not renew his request for dismissal based on violation of his right to a speedy trial. To the extent that defendant now argues that his right to a speedy trial was violated in the period between September 13, 2010 and October 5, 2010, such an argument is unpreserved and reviewed for plain error affecting substantial rights.

The time period between September 13 and October 5 was chiefly occupied with adjudication of defendant's motion to suppress certain reports and testimony. Thus, it appears that most, if not all, of the additional delay in defendant's trial was attributable to defendant. Further, although the delay had become presumptively prejudicial to defendant, there is no basis for this Court to conclude that defendant was prejudiced by the delay when a large portion of the delay, including the portion between September 13 and October 5, was attributable to defendant.

Balancing the four factors set forth in *Williams*, 475 Mich. at 261, 716 N.W.2d 208,[2] we conclude that defendant's right to a speedy trial was not violated. The record demonstrates that a large portion of the delay was attributable to defendant. Defendant did not file a motion alleging that his right to a speedy trial was violated until approximately 16 months had passed since his arrest, and his trial commenced shortly after his motion was heard. Finally, no specific prejudice to his defense is alleged to have occurred.

*People v. Alexander*, 2013 WL 5663122, at * 9–11 (additional citations omitted).

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. Amend. VI.  To determine whether a speedy trial violation has occurred, the court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  No single factor is determinative, rather a court must weigh them and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. 407 U.S. at 533.  The right to a speedy trial "is 'amorphous,' 'slippery,' and 'necessarily relative.'" *Vermont v. Brillon,* 556 U.S. 81, 89 (2009)(quoting *Barker*, 407 U.S., at 522)(quoting *Beavers v. Haubert*, 198 U.S. 77, 87 (1905)).

---

[2] *People v. Williams*, 475 Mich. 245, 248, 716 N.W.2d 208, 211 (2006).

The length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530.  Therefore, to trigger a speedy trial analysis, the accused must allege that the interval between the accusation and the trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. *Doggett v. United States,* 505 U.S. 647, 651-52 (1992).  Federal courts have generally found post-accusation delays that approach one year to be "presumptively prejudicial". *Id.* 505 U.S. at 652, n. 1; *United States v. Brown,* 90 F. Supp. 2d 841, 846 (E.D. Mich. 2000).

Petitioner claims that the delay between his arrest and trial date was 18 months.  Because the 18-month delay between the petitioner's arrest and trial is presumptively prejudicial, this Court must engage in an examination of the remaining *Barker* factors. *See U.S. v. Bass,* 460 F.3d 830, 836 (6th Cir. 2006).

With respect to the second *Barker* factor, the reasons for the delay, the Court must determine "whether the government or the criminal defendant is more to blame for [the] delay." *Maples v. Stegall,* 427 F.3d 1020, 1026 (6th Cir. 2005)(citing *Doggett*, 505 U.S. at 651).  When evaluating a speedy trial claim, delays caused by the defense are to be

weighed against the defendant. *Vermont v. Brillon,* 556 U.S. at 90; *See also U.S. v. Brown*, 498 F. 3d 523, 531 (6th Cir. 2007).

In the present case, several delays were caused by motions filed by defense counsel or defense counsel's requests for adjournments. Delays caused by defense counsel are also attributable to the defense for speedy trial purposes. *Vermont v. Brillon*, 556 U.S. at 90-91. Moreover, the Michigan Court of Appeals reasonably balanced the *Barker* factors when finding that one of the delays was attributable to the defense because petitioner had stipulated to the continuance. *See Stephenson v. Kramer*, 52 F. App'x. 325, 327 (9th Cir. 2002).

Some of the delays in taking the case to trial were due to problems with rescheduling the trial due to the court's docket. Although government delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government under *Barker,* more neutral reasons such as negligence or overcrowded dockets weigh against the state less heavily. See *Vermont v. Brillon,* 556 U.S. at 90; *Barker,* 407 U.S. at 531; *Maples*, 427 F. 3d at 1026.

Petitioner's speedy trial claim also fails because there is no evidence on the record that any part of this delay was intentionally caused by the trial court or the prosecution. *Norris v. v. Schotten*, 146 F. 3d 314, 327-28

(6th Cir. 2008).  There is nothing in the record to indicate a "willful attempt" by the prosecution to delay the trial, *Burns v. Lafler,* 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004)(quoting *Davis v. McLaughlin*, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000)), nor is there any evidence that the prosecution intentionally delayed the trial to gain a tactical advantage over the petitioner. *Id.;* See also *Brown*, 498 F. 3d at 531.

With regard to the third *Barker* factor, "[t]he defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32.  A criminal defendant's "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.*

Petitioner did not assert his right to a speedy trial until 16 months after he had been arrested.  Petitioner's 16-month delay in asserting his right to a speedy trial weighs against a finding that his right to a speedy trial was violated. *See U.S. v. Flowers,* 476 F. App'x. 55, 63 (6th Cir. 2012).

Finally, petitioner is not entitled to habeas relief on his speedy trial claim, because he has not shown that his defense was prejudiced by this delay. *Burns*, 328 F. Supp. 2d at 722.  Of the four factors to be assessed in

determining whether a defendant's speedy trial rights have been violated, prejudice to the defendant is the most critical one. See *Trigg v. State of Tenn.*, 507 F. 3d 949, 954 (6th Cir. 1975).

Although the petitioner claims that the delays in bringing his case to trial caused him to lose certain witnesses and to lose his memory of some of the events, petitioner does not name any specific witnesses who were lost by the passage of time nor has he offered any specifics regarding his lost memory of the events. Speculation is insufficient to prove prejudice for a speedy trial claim. *See United States v. Washam*, 468 F. App'x. 568, 574 (6th Cir. 2012)("aside from speculating that certain unnamed alibi witnesses now have faded memories, Washam identifies no prejudice").

Finally, any prejudice to petitioner from his pre-trial incarceration "is too slight to constitute an unconstitutional denial of his right to a speedy trial," in light of the fact that the other *Barker* factors do not support petitioner's speedy trial claim. See *Wells v. Petsock,* 941 F. 2d 253, 259 (3rd Cir. 1991).  Petitioner is not entitled to relief on his third claim.

### D. Claims # 4 and # 7. The ineffective assistance of trial counsel claims.

Petitioner next alleges he was denied the effective assistance of counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner initially argues that he was constructively denied the assistance of counsel because of trial counsel's alleged deficiencies.

The Supreme Court has recognized that in certain Sixth Amendment contexts, prejudice is presumed. *Strickland,* 466 U.S. at 692. The "actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance." *Id.*

Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a defendant need not make a showing of prejudice to establish ineffective assistance of counsel. *Moss v. Hofbauer,* 286 F. 3d 851, 860 (6th Cir. 2002)(quoting *United States v. Cronic,* 466 U.S. 648,

659 (1984)). However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, so that reversal based on ineffective assistance of counsel is warranted without any inquiry into prejudice, the attorney's failure to test the prosecutor's case "must be complete." *Bell v. Cone,* 535 U.S. 685, 697 (2002).

The Michigan Court of Appeals rejected this portion of petitioner's claim:

> As for the *Cronic* standard, we find no support in the record for the conclusion that defense counsel's performance resulted in an entire failure to subject the prosecutor's case to meaningful adversarial testing. *Cronic*, 466 U.S. at 659. As stated above, defendant in fact subjected all of the prosecution's witnesses to extensive cross-examination, and displayed at least an adequate understanding of the issues involved in defending cases of this type.

*People v. Alexander*, 2013 WL 5663122, at * 14.

In the present case, defense counsel filed several pre-trial motions, opposed the prosecution's request to consolidate the cases, cross-examined the witnesses, made a motion for a directed verdict, and made a closing argument. Counsel's alleged errors did not rise to the level of the constructive denial of counsel, because counsel actively represented petitioner at his trial. *Moss,* 286 F. 3d at 860-62. The *Cronic* presumption "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge*

*v. Johnson*, 474 F.3d 236, 247 (6th Cir. 2007)(citing *Bell*, 535 U.S. at 697).

Counsel's alleged failures do not amount to a complete failure to provide a

defense.  The presumption of prejudice therefore does not apply and

petitioner would be required to show that he was actually prejudiced by

counsel's alleged omissions in order to obtain habeas relief. *Id.*

Petitioner initially claims that counsel was ineffective for failing to

obtain an expert on the subject of forensic interviews and child sexual

abuse victims and perpetrators in order to be able to effectively cross-

examine the witnesses and possibly to call such an expert to testify

concerning problems with the interviews of the victims.  Petitioner also

claims that counsel was ineffective for failing to obtain an expert on DNA

to challenge the prosecution expert's findings.  Petitioner also claims that

counsel was ineffective for failing to obtain a computer expert.

The Michigan Court of Appeals rejected these claims:

The victims in this case testified in open court about
defendant's sexual abuse. The content of any forensic
interviews was not admitted into evidence, nor did prosecution
experts testify at length about forensic interviewing. Unlike the
case upon which defendant relies, *People v. Owens*,
unpublished opinion per curiam of the Court of Appeals,
decided November 2, 2010 (Docket No. 288074), 2010 WL
4320396,7 the prosecution in this case did not make the
"forceful argument" that the victims could not have been
coached because they underwent the forensic interview
process. Unpub op at 3. Further, reference to forensic
interviewing was not, as it was in *Owens*, used bolster the

credibility of the victim. *Id.* at 4. Instead, here, to the extent that forensic interviewing was even mentioned at trial, it was merely mentioned as part of the police investigation and as leading to the addition of TH's charges against defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Here, the record reflects that AH and TH volunteered their allegations to caregivers, and did not initially make them in the context of a forensic interview or indeed while being questioned at all. As for KB, she was questioned by her mother concerning the events of the weekend she spent with defendant. Defense counsel thoroughly cross-examined the victims about their allegations, and they provided detailed and consistent answers. No attempt was made by the prosecution to buttress their credibility through testimony of a forensic interviewer or reference to the forensic interviewing process. Unlike the defense counsel in *Owens*, defendant's counsel did not display a "disturbing" lack of knowledge of the question of child sexual abuse victims. Unpub op at 2. For example, defense counsel questioned AH about whether she felt mistreated by defendant because she didn't receive as many privileges as the other children in the house as well as whether she had heard allegations from anyone else about defendant including whether she had spoken to any of the other victims about defendant's abuse. Defense counsel further attempted to impeach AH regarding a period of time where she attempted to recant her allegations to a police detective, and argued in closing argument that AH had been led to believe that recanting her story would get her in legal trouble. Counsel also cross-examined all the victims about possible influences to their testimony, and argued that the victims behaved inconsistently toward defendant following his arrest.

As for the professional witnesses, defense counsel elicited testimony regarding a mix-up in DNA samples sent to the lab, as well as testimony that SH had never been tested to be excluded from the DNA results, and that the partial profile of AH was matched at only 8 locations. Defense counsel also argued that the prosecution did not present evidence that the victims were suffering from typical reactions to sexual abuse

and had not seen a counselor or psychologist. In so doing, counsel displayed an awareness of the issues involved with child sexual abuse victims and their testimony, rather than displaying the "disturbing" lack of awareness of these issues displayed by defense counsel in *Owens*. *Owens*, Unpub op at 2.

While defense counsel arguably could have presented expert testimony on how children's testimony regarding sexual abuse may be influenced by the adults around them, we are not convinced that counsel's failure to do so rendered his performance below an objective standard of reasonableness, especially in light of his extensive cross-examination of the victims. We do not measure trial counsel's performance with the benefit of hindsight. *People v. Payne*, 285 Mich. App. 181, 188, 190, 774 N.W.2d 714 (2009).

Further, defendant cannot show that any failure on the part of defense counsel to retain or call expert witnesses was outcome-determinative. As stated above, counsel engaged in extensive cross-examination of the victims and professional witnesses, and was successful at raising issues such as the mishandling of DNA evidence and the victims' post-abuse behavior toward defendant. All three of the victims testified clearly and precisely about defendant's sexual abuse; moreover, the record does not contain evidence that would support an inference that all three of the victims were coached or coerced to provide such testimony. The testimony of an expert witness on possible influences on the victim's testimony would not have been reasonably likely to result in a jury concluding that all three of these victims were lying. As the victim's testimony alone is sufficient to result in conviction, we conclude that defendant additionally cannot demonstrate prejudice under the *Strickland* standard.

*People v. Alexander*, 2013 WL 5663122, at * 12–14 (additional citation omitted).

The Michigan Court of Appeals also rejected the claim that counsel was ineffective in failing to call a computer expert:

> Further, defendant claims that his counsel failed to engage a computer expert, but does not elaborate on how a computer expert would have aided his defense and provides no proof that an expert witness would have testified in his favor. Defendant thus has not established the factual predicate for his claim of ineffective assistance.

*People v. Alexander*, 2013 WL 5663122, at * 15.

A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F. 3d 662, 672 (6th Cir. 2006).  Petitioner has offered no evidence to this Court that there was an expert who would have testified favorably for petitioner that the protocol for interviewing minors in sexual misconduct cases was not followed, that the DNA results were skewed, or that there were problems with the evidence seized from petitioner's computer. He is not entitled to relief on his claim.

Petitioner was in any event not prejudiced by counsel's failure to have an expert witness testify on the susceptibility of child victims and the importance of following forensic protocol when interviewing young children, because this was much less of a concern in this case involving victims who were sixteen, thirteen, and twelve years old at the time of petitioner's trial and only a year or two younger when most of these

incidents occurred. *See, e.g., Spaulding v. Larson*, 704 F. App'x. 475, 483 (6th Cir. 2017).

With respect to the DNA issue, the Michigan Court of Appeals noted that counsel cross-examined the DNA experts and obtained admissions from them that there were flaws with the DNA testing.

The Supreme Court has noted that: "[I]n many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Harrington v. Richter,* 562 U.S. 86, 111 (2011). A defense counsel's decision to cross-examine a prosecutor's experts concerning their findings, instead of calling an expert witness for the defense to challenge that expert's conclusions, has at times been held to be a reasonable trial strategy that defeats a habeas petitioner's ineffective assistance of trial counsel claim. *See Tinsley v. Million,* 399 F.3d 796, 806 (6th Cir. 2005); *See also Jackson v. McQuiggin,* 553 F. App'x. 575, 580-82 (6th Cir. 2014).

Petitioner next claims that counsel's cross-examination of the three victims was deficient.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d  629, 651 (E.D. Mich. 2002). "Impeachment

strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

The record establishes that counsel cross-examined the victims, particularly about inconsistencies between their preliminary examination testimony and their trial testimony, confronted the victims about their post-assault behavior towards petitioner was inconsistent with them being sexually assaulted, obtained an admission from AH that she attempted to recant her allegations, and brought up these issues in his closing argument.

In the present case, defense counsel's performance did not constitute ineffective assistance of counsel where the record shows that defense counsel carefully cross-examined the victims and in his closing argument emphasized the weaknesses in their testimony.  *See Krist v. Foltz,* 804 F. 2d 944, 948-49 (6th Cir. 1986); *Millender v. Adams,* 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002).  "Although other attorneys might have reached a different conclusion about the value of cross-examining [the victims] in greater detail, counsel's strategic choice not to further cross-examine the victims was "'within the wide range of reasonable professional assistance.'" *See Moss v. Hofbauer,* 286 F. 3d 851, 864 (6th

Cir. 2002)(quoting *Strickland*, 466 U.S. at 689).  Finally, petitioner has

failed to identify how additional impeachment of the victims would have

affected the jury's decision.  Defense counsel did not perform ineffectively

by not more forcefully cross-examining the victims, particularly when the

effect of further probing was entirely speculative on petitioner's part. *See*

*Jackson v. Bradshaw,* 681 F.3d 753, 764-65 (6th Cir. 2012).

Finally, petitioner in his Standard 4[3] *pro se* appellate brief alleged

numerous other deficiencies on the part of defense counsel.  These were

rejected by the Michigan Court of Appeals:

> Finally, much of defendant's brief alleges conduct that he
> deems unfair or illegal on the part of the arresting officer,
> delays in receiving a discovery packet from the prosecution,
> disorganization on the part of his defense counsel, failure of his
> defense counsel to demand a bench trial, and inadequate
> representation at his preliminary exam. Defendant has not
> established the factual predicate for these claims, and has not
> demonstrated that, if true, they were outcome determinative[,].

*People v. Alexander*, 2013 WL 5663122, at * 15 (internal citations omitted).

Conclusory allegations of ineffective assistance of counsel, without

any evidentiary support, do not provide a basis for habeas relief. *See*

---

[3] Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides
that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's
counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp.
2d 574, 594, n. 6 (E.D. Mich. 2008).

*Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Petitioner is not entitled to relief on these claims because they are conclusory and unsupported.

Moreover, petitioner failed to show that trial counsel was ineffective for failing to demand a bench trial because petitioner has made no showing that the judge or the prosecutor would have agreed to a bench trial, as required by M.C.L.A. 763.3(1). *See e.g. United States v. Bass*, 712 F. Supp. 2d 931, 938 (D. Neb. 2010), *rev'd on other grds*, 655 F.3d 758 (8th Cir. 2011). Petitioner is not entitled to relief on his fourth and seventh claims.

### E. Claim # 5. The evidentiary issues claim.

Petitioner next claims that the trial court erred in admitting various pieces of evidence that was irrelevant and more prejudicial than probative.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009); *See also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

Petitioner's claim that this evidence should have been excluded under M.R.E. 403 for being more prejudicial than probative does not entitle petitioner to habeas relief. The Sixth Circuit observed that "[t]he Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F. 3d 536, 551 (6th Cir. 2012)(emphasis original).

To the extent that petitioner argues that the state court violated M.R.E. 404(b) or any other provision of state law by admitting improper character evidence or evidence of prior bad acts, such a claim is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F. 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible

as bad acts evidence under California law). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003).

Petitioner also claims that the court erred in admitting statements that petitioner made to a detective during a pre-interview for a polygraph examination.

The Supreme Court has never held that testimony or evidence which implies the results of a polygraph or similar test renders a criminal defendant's trial fundamentally unfair, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments. *See Maldonado v. Wilson,* 416 F.3d 470, 477 (6th Cir. 2005). To grant habeas relief to petitioner "would necessarily imply that the Constitution requires all states to have rules of evidence precluding some testimony about truth tests." *Id.,* at 478. Because no Supreme Court precedent demands this result, the Michigan Court of Appeals' rejection of petitioner's claim was not unreasonable under 28 U.S.C. § 2254(d). *Id.*

Moreover, the Sixth Circuit on direct review of federal criminal convictions has "refused to impose a *per se* prohibition against polygraph evidence, and the mere mention of the words 'polygraph examination' does not entitle a defendant to a new trial." *United States v. Odom*, 13 F. 3d 949, 957 (6th Cir. 1994).

The Michigan Court of Appeals rejected this claim because there was no mention made of the polygraph examination or petitioner's answers to the polygraph examiner.  The Michigan Court of Appeals also ruled that trial court properly concluded that defendant's statements were admissible as admissions of a party-opponent. The Michigan Court of Appeals also noted that none of petitioner's comments were inculpatory. *People v. Alexander*, No.  2013 WL 5663122, at * 16.  In light of the fact that no mention was made of the polygraph examination or results, and that petitioner did not make any inculpatory remarks, petitioner is not entitled to relief on his claim.

Petitioner lastly contends that the trial court violated his right to present a defense when he excluded evidence that petitioner had sexual relations with SH and did not enjoy oral sex.  The Michigan Court of Appeals rejected this claim because it was cumulative of SH's testimony that she had sex with petitioner three days before his arrest and he did not

perform oral sex on her. *People v. Alexander*, No.  2013 WL 5663122, at *
17.

In light of the fact that evidence that petitioner did not enjoy
performing oral sex would have been cumulative of SH's testimony, its
exclusion from evidence did not violate petitioner's right to present a
defense or to a fair trial. *See Washington v. Renico*, 455 F.3d 722, 728-29
(6th Cir. 2006).  Petitioner is not entitled to relief on his fifth claim.

### F. Claim # 6.  Cumulative error.

Petitioner contends that he is entitled to habeas relief because of
cumulative error.

The cumulative weight of alleged constitutional trial errors in a state
prosecution does not warrant federal habeas relief, because there is no
clearly established federal law permitting or requiring the cumulation of
distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F.
3d 250, 256 (6th Cir. 2005).  Petitioner is not entitled to habeas relief
based on cumulative error. *Id.*

### G. The claims in the amended petition.

Petitioner raises three claims in his amended petition: (1) petitioner
claims he was denied his right to self-representation, (2) his sentencing
guidelines were incorrectly scored, and (3) appellate counsel was

ineffective for failing to raise these claims on his appeal of right and was also ineffective for failing to raise several other claims on his appeal of right and for improperly raising several other claims.

Respondent contends that the claims raised in the amended habeas petition are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

The Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Alexander,* 503 Mich. at 947.

The Michigan Court of Appeals denied petitioner's post-conviction appeal in a form order "because the defendant failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Alexander,* No. 342398 (Mich.Ct.App. July 11, 2018)(ECF No. 22-45, PageID. 5258). These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise his claims on his direct appeal as their rationale for rejecting his post-conviction appeals. Because the form orders in this case are ambiguous as to whether they

refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

The Macomb County Circuit Court judge, in rejecting petitioner's post-conviction claims, concluded that petitioner had failed to demonstrate good cause, as required by M.C.R. 6.508(D)(3), for failing to raise these issues on his appeal of right. *People v. Alexander,* No. 2009-5130, 2009-5132, 2009-5135, * 4-5, 11 (Macomb Cty.Cir.Ct., Aug. 16, 2017)(ECF No. 22-36, PageID. 4389-90, 4396). Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's self-representation and sentencing guidelines claims are procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F. 3d 284, 292-93 (6th Cir. 2007).

Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette,* 624 F. 3d at 291.  However, for the reasons stated below, petitioner is not entitled to habeas relief on this claim.

- 44 -

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse the procedural default of his self-representation and sentencing guidelines claims.   Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

*Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that petitioner raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel filed a forty nine page appellate brief that raised six claims, which are basically the

first six claims raised by petitioner in his original petition.[4]  Petitioner has
not shown that appellate counsel's strategy in presenting these four
claims and not raising other claims was deficient or unreasonable.
Moreover, for the reasons stated by the Assistant Michigan Attorney
General in his answer to the petition for writ of habeas corpus, none of the
claims raised by petitioner in his post-conviction motion were "dead bang
winners."  Because the defaulted claims are not "dead bang winners,"
petitioner has failed to establish cause for his procedural default of failing
to raise these claims on direct review. *See McMeans v. Brigano,* 228 F.
3d 674, 682-83 (6th Cir. 2000).

Because these post-conviction claims lack merit, this Court must
reject any independent ineffective assistance of appellate counsel claim
raised by petitioner.  "[A]ppellate counsel cannot be found to be ineffective
for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615
F. 3d 448, 452 (6th Cir. 2010).

More importantly, this Court notes that in addition to the appellate
brief filed by appellate counsel, petitioner filed a supplemental Standard 4
*pro per* brief on his appeal of right before the Michigan Court of Appeals.[5]

---

[4] *See* Defendant-Appellant's Brief on Appeal, ECF No. 10-12, PageID. 803-861.
[5]  See Defendant-Appellant's Pro Per Brief on Appeal, ECF 10-12, PageID. 881-901.

Although petitioner raised several claims, he did not present any of the issues that he would subsequently raise for the first time on his post-conviction motion for relief from judgment.  Petitioner took advantage of the opportunity pursuant to the Michigan Court Rules to file a supplemental appellate brief to raise claims that had not been raised by his appellate counsel, yet failed to include his self-representation and sentencing guidelines claims in his supplemental brief.

Petitioner has failed to offer any credible reasons for failing to raise these claims in his supplemental *pro per* brief that he filed as part of his direct appeal. Petitioner argued both in the state courts and before this Court that he could not raise his self-representation claim earlier because he did not have the transcript from the preliminary examination, where he claims he stated he wanted to represent himself. The judge on post-conviction review rejected this argument because petitioner's own exhibit that he attached to his motion for relief from judgment showed that the preliminary examination transcript had been in the state district court file since April 14, 2009, thus, petitioner and his appellate counsel could have had access to this transcript. *People v. Alexander,* No. 2009-5130, 2009-5132, 2009-5135, * 5 (ECF No. 22-36, PageID. 4390).

Petitioner has offered no good reason for his failure to include his self-representation and sentencing guidelines claims in his supplemental *pro per* brief on his direct appeal.  He has failed to establish cause to excuse the default of these claims. *See Rockwell v. Palmer,* 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008)(habeas petitioner did not show any cause for his failure to raise on direct appeal his claim of ineffective assistance of trial counsel, where petitioner had filed two briefs on his own behalf raising other claims that had not been asserted by his appellate counsel, but he offered no explanation for his failure to raise the ineffective assistance claim at the same time); *See also Sheffield v. Burt*, 731 F. App'x. 438, 442 (6th Cir. 2018)(petitioner failed to show cause under M.C.R. 6.508(D)(3) for failing to raise issues on direct appeal; "And as the Michigan trial court and the government note, Sheffield had the opportunity to raise any issues in his Standard 4 brief on direct appeal that he felt his appellate counsel should have raised. He did not raise the issue").

In the present case, petitioner has failed to show cause to excuse his default.  Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his defaulted claims as a ground for a writ of habeas corpus in spite of the procedural default.  Petitioner's sufficiency of evidence claim (Claim # 1) is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Finally, assuming that petitioner had established cause for the default of his claims, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief.  The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007).   For the reasons stated by the Macomb County Circuit Court in rejecting petitioner's post-conviction claims, and by the Assistant Michigan Attorney General in his answer to the amended petition for writ of habeas corpus, petitioner failed to show that his procedurally defaulted claims have any merit.  Petitioner is not entitled to habeas relief on his procedurally defaulted claims.

Finally, petitioner also claims that appellate counsel was ineffective for failing to raise several other claims on his appeal of right and for improperly presenting several other claims.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel both on appeals of right, *See Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985), and on first-tier discretionary appeals. *Halbert v. Michigan*, 545 U.S. 605, 609–10 (2005). Nonetheless, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. at 751.  A habeas court reviewing an ineffective assistance of appellate counsel claim must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 578 U.S. 113, 119 (2016)(per curiam).

Petitioner first argues that appellate counsel failed to raise a claim that petitioner's right to be present at all critical stages of trial was violated when the judge gave the jurors a supplemental instruction without petitioner being present.  Petitioner also argues that although appellate counsel did raise an improper joinder claim, which makes up petitioner's second claim, counsel failed to argue that it was improper to join the

possession with intent to deliver cocaine charge with the criminal sexual conduct and other sexual misconduct charges.

Respondent argues that appellate counsel was not ineffective for failing to raise these two claims because neither issue had been preserved in the trial court through an objection. (ECF No. 21, PageID. 1472-73). Petitioner waived review of his right to be present when his attorney agreed to the jury instruction without his client's presence. (ECF No. 22-38, PageID. 4234).   The Michigan Court of Appeals noted on its own that petitioner did not object in the state court to the cocaine charge being joined with the various sexual misconduct charges. *People v. Alexander*, 2013 WL 5663122, at * 8, n. 4.

Trial counsel's failure to object to either issue means that plain error review would have applied to these claims; "appellate counsel's decision not to raise a waived issue was reasonable[.]" *Hoffner v. Bradshaw*, 622 F.3d 487, 506 (6th Cir. 2010).

Petitioner next contends that appellate counsel was deficient in his handling of the speedy trial claim that he raised on petitioner's appeal of right.  Petitioner notes that appellate counsel incorrectly attributed a seven day period between January 13, 2010 to January 20, 2010 to the defense,

when the prosecution conceded that this time period should have been attributable to the prosecution.

The Michigan Court of Appeals identified this time period in its analysis of the speedy trial claim and incorrectly attributed it to the defense, but the Michigan Court of Appeals nonetheless concluded that "the bulk of the period between December 04, 2009 and May 11, 2010, 158 days, was attributable to the defendant." *People v. Alexander*, 2013 WL 5663122, at * 10. Even if this seven-day period incorrectly attributed to the defense was removed from the analysis, that would still leave 151 days attributed to petitioner.  Moreover, for the reasons stated both by the Michigan Court of Appeals and this Court, petitioner failed to show that his right to a speedy trial was violated.  Because petitioner is unable to show that the factors enunciated in *Barker* supported a finding that his right to a speedy trial was violated, petitioner is unable to show that appellate counsel's minor mistake in presenting the speedy trial claim was ineffective. *See, e.g., Everett v. Bergh*, 477 F. App'x. 325, 328 (6th Cir. 2012)("Everett cannot show that the *Barker* factors so favored him that his appellate counsel was ineffective for failing to raise a constitutional speedy-trial claim. We therefore cannot consider the claim here.").

- 53 -

Petitioner lastly claims that appellate counsel was ineffective for failing to make any argument challenging the sufficiency of evidence to convict petitioner on the possession of sexually abusive materials charge, even though counsel mentioned the conviction in the heading of the sufficiency of evidence claim in his appellate brief.

Petitioner failed to show that the evidence was insufficient to convict on this charge.  Accordingly, appellate counsel was not ineffective for failing to challenge the sufficiency of evidence for this claim on petitioner's appeal of right. *See Hand v. Houk*, 871 F.3d 390, 415-16 (6th Cir. 2017). Petitioner is not entitled to relief on his final claim.

## IV.  CONCLUSION

The petition for writ of habeas corpus is denied with prejudice.

The Court denies a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional

- 54 -

claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court denies petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. However, although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the Petition for a

Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE**.

IT IS FURTHER ORDERED that a Certificate of Appealability is

**DENIED**.

IT IS FURTHER ORDERED that Petitioner is **GRANTED** leave to

appeal *in forma pauperis.*

Dated:  August 24, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 24, 2022, by electronic and/or ordinary mail and also
on Duncan Alexander #785862, Kinross Correctional Facility,
4533 W. Industrial Park Drive, Kincheloe, MI 49786.

s/Brianna Sauve
Deputy Clerk

---